No. 74,955

STATE OF KANSAS, *Appellee,* v. RAMON A. NORIEGA, JR., *Appellant.*

932 P.2d 940

Opinion filed January 24, 1997.

*Lisa Nathanson*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*James A. Brown*, assistant district attorney, argued the cause, and *Joan M. Hamilton*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant Ramon A. Noriega, Jr., appeals his convictions of one count of felony murder, one count of aggravated burglary, and one count of aggravated robbery. Defendant claims the evidence was insufficient for a finding of guilty of aggravated burglary and aggravated robbery. Defendant also argues the trial court erred in (a) in failing to give cautionary jury instructions regarding accomplice and/or informant testimony and an eyewitness identification instruction; (b) failing to specify the statutory elements of burglary in the aggravated burglary instruction; and (c) giving an erroneous modified *Allen* instruction and an improper instruction on the burden of proof and the presumption of innocence. Defendant also claims he was denied his constitutional right to a speedy trial.

Sidney Robinson, the deceased, resided alone in Topeka. On January 11, 1994, his body was discovered in his back yard, clothed in a T-shirt and boxer shorts. Robinson had sustained three bullet wounds: one to his right lower leg, one to his left back, and one to

his right lower back. The back wounds were fatal. The exact time of death could not be determined.

Robinson was a coin collector. Some of his coins and his 1979 Lincoln Continental automobile were missing. Police investigation indicated that the front door glass was broken. Penny wrappers, pieces of Robinson's coin collection, and square coin holders were found scattered in the living room. Police observed Robinson's pants beside his bed and his glasses sitting on his nightstand. Police recovered shell casings and a bullet fragment. They found a spent shell casing on Robinson's kitchen floor, a bullet fragment on the floor in the back porch area, and a third shell cartridge next to Robinson's left knee. The K.B.I. forensics firearms expert determined that the bullet fragment was consistent with a bullet commonly fired by a .380 caliber gun.

At trial, the State alleged that, after an evening of drinking at the Twilighter, a nearby tavern, Noriega and Douglas Leon Ray Abel, his codefendant, stole valuable coins from Robinson's collection at gunpoint in the early morning hours of January 10, 1994, and shot Robinson three times. Two witnesses, who had given several different and conflicting statements during the police investigation of Robinson's death, testified for the State.

Larry Baier testified that he and Fred Hunderfund, a neighbor of the deceased, went to the Twilighter tavern on Sunday night, January 9. While at the bar, Hunderfund introduced Baier to a man named "Keesh," whom Baier identified in court as Ramon Noriega, and to Noriega's friend, Douglas Abel. Baier left the Twilighter a little after 2 a.m. When he was about a quarter of a block away from the deceased's residence, he heard two or three shots. A short while later, he observed two men running between Hunderfund's and Robinson's houses. At trial, Baier identified the two men as Noriega and Abel.

Baier admitted that he had lied to the police several times when interviewed concerning the crime. He also stated that he had prior convictions of aggravated burglary and was on parole at the time of the shooting. Baier also testified that prior to the final police interview when he identified Abel, the police had booked Baier for a parole violation, told him he was a suspect in the murder, and

stated that if he would cooperate in the investigation of the murder, they would attempt to keep him out of prison.

Police officers corroborated that there were discrepancies in Baier's testimony regarding the crime. One policeman testified that after Baier had initially stated he knew nothing about the murder, the police were contacted by a clerk at a Kwik Shop who stated Baier had told the clerk that Baier was near the house where the shooting had occurred and had encountered two white men, one of whom held a gun to him and told him, "You didn't see shit." After the police reviewed the Kwik Shop surveillance tape and identified Baier, they brought him back for further questioning. Baier continued to deny any knowledge of the crime until police confronted him with the tape. He then told police he had encountered two black males. Later he told police he had seen a Mexican male, "Speedy," whom Baier described as being 5'2". The police showed Baier pictures of Hispanic males, but Baier failed to identify "Speedy." Finally, Baier told the police that he encountered one man at the scene named "Keesh," the brother of Wilson Noriega, and another man with blond hair. Baier was shown some pictures, which included a picture of Abel. He did not identify Abel at that time.

Police testified that after being booked for a parole violation, Baier was interviewed again. When shown six photographs, he identified Douglas Abel as the other man he saw the night of the murder. When confronted with a wheat penny that officers had taken from him, Baier first stated he did not know where it came from. Baier eventually admitted that after Robinson's body had been removed from the house, Baier had entered Robinson's house and had taken food and the wheat penny found in his pocket.

A second witness, Bobby Shutts, who had hired an attorney and had been granted immunity from prosecution for all crimes connected with the incident except murder, testified that prior to the murder, Abel visited Shutts at his home on January 9, 1994. Abel showed Shutts a chrome .380 semiautomatic gun with bullets in the clip. Noriega then arrived at Shutts' house. The three went to the Twilighter tavern for a night of drinking. Abel had left the gun at Shutts' house. They departed the Twilighter at closing time. A

few minutes after Shutts returned home, Abel came and picked up his gun.

Shutts stated that "within the next day or two," Abel returned, gave Shutts some coins, and asked him to sell them. Shutts was to keep $50 for himself and split the remaining money between Abel and Noriega. Shutts sold most of the coins for $200 to "some black guys" and threw the rest of the coins in the river.

Shutts testified he gave Abel his share of the money the next weekend and Noriega his part of the money a couple of days after Noriega telephoned him to ask if Shutts had the money. Shutts stated that Abel had told him on the telephone that he (Abel) had "fucked up" and "[w]hen they got the coins, something went wrong." The next weekend Abel informed Shutts he had disassembled the gun and thrown it in the Kansas River. On direct examination, Shutts acknowledged that he had lied to the police when first questioned about the murder and had been granted limited immunity from prosecution.

Tracy Anderson, a bartender at the Twilighter on the night of the murder, testified that she remembered seeing Abel, Noriega, Baier, and Hunderfund in the bar. Mark Thurber, a self-employed dealer in rare coins, testified that Robinson had been a customer who usually purchased wheat pennies. He testified that on January 17, 1994, a man who identified himself as "Ronald Ruiz" came into his store and inquired about selling several pennies which Thurber recognized as coins he had sold to Robinson. Ruiz was interviewed by police and eventually related that while he was playing video games at West Ridge Mall, he was approached by a black male who sold him coins.

Neither defendant testified at trial. Three witnesses for the defense, all police detectives, testified in detail concerning the contradictory stories told to the police by Baier and Shutts. Detective Thomas G. Young testified that Baier eventually admitted he was lying and told Young that he was afraid to tell the truth because he was afraid of reprisal by Noriega's brother, Wilson Noriega, with whom Baier had served prison time. Young testified that after Baier admitted he was afraid of Noriega's brother, Baier picked out a photograph of Noriega from a photo line-up. Detective Douglas

Eby, chief investigator in the case, also testified. He stated that Baier did not identify Abel from a photo line-up until after Baier had been arrested.

## SUFFICIENCY OF THE EVIDENCE

In denying the defendant's motion for judgment of acquittal at the close of the State's evidence, the trial judge stated:

"Well, I guess I could say that if there was ever a case where a defense motion for acquittal might be appropriate at this juncture, this might be one. The nexus or connection between the activities at the home of the deceased and these two defendants is very tenuous, and that's, that's the major difficulty that I have with denying the defendant's motion. But I do deny such. It seems to me that the credibility of the state's witnesses is the key, and if the jury believes the latest story that these two individuals told, together with the circumstantial evidence, that a reasonable trier of fact could come up with the conclusion that these two defendants are guilty of the three crimes charged against each of them."

On appeal, Noriega argues that there was insufficient evidence for the jury to conclude beyond a reasonable doubt that he was guilty of the underlying felonies of aggravated burglary and aggravated robbery and, therefore, his felony murder conviction cannot stand. When the sufficiency of the evidence is challenged, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, an appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Johnson*, 255 Kan. 252, Syl. ¶ 6, 874 P.2d 623 (1994); *State v. Van Winkle*, 254 Kan. 214, Syl. ¶ 5, 864 P.2d 729 (1993), *cert. denied* 511 U.S. 1144, 128 L. Ed. 2d 890 (1994); *State v. Ferguson*, 254 Kan. 62, Syl. ¶ 4, 864 P.2d 693 (1993). A conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Bradford*, 254 Kan. 133, Syl. ¶ 2, 864 P.2d 680 (1993).

The jury found Noriega guilty of both underlying felonies of aggravated burglary and aggravated robbery. Aggravated burglary is "knowingly and without authority entering into or remaining within any building . . . in which there is a human being, with intent to commit a felony, theft or sexual battery therein." K.S.A. 21-3716. Aggravated robbery is a robbery committed by a person

who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery. K.S.A. 21-3427.

The evidence at trial revealed that Robinson was shot three times, both inside and outside the house, and that two of the shots were fatal. Evidence supported inferences that Robinson's house had been broken into and that items from his house were stolen. The additional evidence was that Noriega, Abel, and Shutts all left Shutts' house together to go drinking on the evening of the crime. Several witnesses saw them drinking together at the Twilighter. Baier identified Noriega and Abel as the two men he saw running away from Robinson's house shortly after Baier heard shots fired. Shutts testified that Abel had left a gun of the same general type used to commit the murder at Shutts' house before the group left for the Twilighter. Shutts testified that a few minutes after he returned from the Twilighter, Abel retrieved the gun. Shutts also testified that he distributed proceeds from the sale of coins evenly between Abel and Noriega. Shutts testified that Abel told him that "[w]hen *they* got the coins, something went wrong."

It is the function of the jury in a criminal case to determine the weight and credit to be given the testimony of each witness. On review, the credibility of witnesses will not be passed upon, conflicting evidence will not be weighed, and all questions of credibility are resolved in favor of the State. *Van Winkle*, 254 Kan. at 225. The credibility of the State's primary witnesses, Shutts and Baier, was brought into question in opening argument, throughout the trial, and during closing arguments. Both witnesses admitted to lying to police prior to trial and having been involved in crimes subsequent to the murder. The jury had the opportunity to evaluate the evidence and the testimony of the witnesses. The jury obviously believed the State's witnesses were credible and accepted the evidence presented by the State as true. Under the circumstances, the evidence adduced at trial was sufficient for a reasonable factfinder to conclude that Noriega was guilty beyond a reasonable doubt of the underlying felonies of aggravated burglary and aggravated robbery.

## ERRORS IN INSTRUCTION

Noriega contends that the trial court committed several errors

in instructing the jury. Noriega made no objection to these instructions at trial, nor did he request any of the instructions he now claims the trial court erred in failing to give. Where a criminal defendant claims error in the trial court's giving or failure to provide a certain instruction, our standard of review depends on whether the defendant made a timely request for, or objected to the failure to give, the instruction at issue. See *State v. Whitaker*, 255 Kan. 118, 872 P.2d 278 (1994). No party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds for the objection, unless the instruction is clearly erroneous. K.S.A. 22-3414(3). The giving or failure to give an instruction is clearly erroneous only if the reviewing court reaches a firm conviction that absent the alleged error there was a real possibility the jury would have returned a different verdict. *State v. DePriest*, 258 Kan. 596, 605, 907 P.2d 868 (1995); *State v. Crawford*, 255 Kan. 47, Syl. ¶ 5, 872 P.2d 293 (1994).

Cautionary Instructions

First, Noriega claims error in the trial court's failure to give cautionary instructions regarding accomplice and paid informant testimony with respect to the testimony of Baier and Shutts. As to the accomplice instruction, PIK Crim. 3d 52.18 defines an accomplice as one who testifies that he or she was involved in the commission of the crime with which the defendant is charged. Noriega's argument that an accomplice instruction was required fails as there was no testimony that either Baier or Shutts acted as accomplices in the murder, aggravated burglary, or aggravated robbery charged.

Noriega also asserts that the trial court erred in failing to instruct the jury that it should consider the testimony of an informant with caution. Noriega argues that because the police did not revoke Baier's parole or charge Shutts with crimes that occurred subsequent to the murder, they were informants who received benefits from the State in exchange for their testimony. PIK Crim. 3d 52.18-A provides:

"You should consider with caution the testimony of an informant who, in exchange for benefits from the State, acts as an agent for the State in obtaining evidence against a defendant, if that testimony is not supported by other evidence."

An informant is an "undisclosed person who confidentially discloses material information of a law violation, thereby supplying a lead to officers for their investigation of a crime. [Citation omitted.] This does not include persons who supply information only after being interviewed by police officers, or who give information as witnesses during the course of investigation." Black's Law Dictionary 780 (6th ed. 1990).

Baier and Shutts were individuals who supplied information only after being interviewed by police officers. They later gave additional statements during the course of the investigation. Neither witness was an informant. Under the facts, the giving of a "paid" informant cautionary instruction was not required.

### Eyewitness Instruction

Noriega next asserts the trial court committed error in failing to give an eyewitness identification instruction, PIK Crim. 3d 52.20. Noriega did not request the instruction.

In any criminal action in which eyewitness identification is a critical part of the prosecution's case and there is a serious question about the reliability of the identification, a cautionary instruction should be given advising the jury as to the factors to be considered in weighing the credibility of eyewitness identification testimony. *State v. Richmond*, 258 Kan. 449, Syl. ¶ 4, 904 P.2d 974 (1995).

The unreliability of Baier and his eyewitness identification was exhaustively explored at trial. In addition to hearing about Baier's prior convictions for dishonesty, the jury was thoroughly informed about Baier's inconsistent stories during the investigation and at the preliminary hearing. Many of the inconsistencies concerned the identification of the defendant. Baier also admitted that his identification of Noriega outside the Robinson home could have taken place between 40 seconds to 10 minutes after he heard the shots. Baier acknowledged more than once that he did not look at the defendant's face but recognized him by his clothes. He also

admitted that a lot of people could have been wearing clothes similar to those of the defendant. Baier admitted lying when he told the police that he had seen a short Mexican man named "Speedy" and also admitted being so drunk he did not know "what planet he was on" at the time he claimed to have seen the defendant.

Noriega's entire defense was the lack of credibility of Baier and Shutts. Under these circumstances, jurors of ordinary intelligence would have received Baier's testimony with caution. For these reasons, we conclude that the giving of the eyewitness identification instruction was not required.

### Aggravated Burglary Instruction

Noriega next argues the trial court committed error in giving an instruction on aggravated burglary which did not specify the felony he intended to commit upon entering the residence. Aggravated burglary was one of the alternative felony charges underlying the felony murder charge. Noriega did not object to the instruction as given; therefore, the clearly erroneous standard applies.

Burglary is defined as "knowingly and without authority entering into or remaining within any . . . [b]uilding, manufactured home, mobile home, tent or other structure which is a dwelling, with intent to commit a felony, theft or sexual battery therein." K.S.A. 21-3715. Aggravated burglary merely requires the additional element that the place of the burglary be occupied by a human being during the course of the burglary. K.S.A. 21-3716.

The State's complaint charged aggravated burglary as follows:

"On or about the 11th day of January, 1994, in the County of Shawnee and State of Kansas, DOUGLAS LEON RAY ABEL, RAMON ALEXANDER NORIEGA, JR., did then and there unlawfully, wilfully and knowingly, without authority and with the intent to commit a felony or theft, to-wit: *Robbery, Aggravated Robbery,* or *Theft* therein, entered into a residence located at 417 NW Fairchild, occupied during time of said entrance by, Sidney J. Robinson, contrary to the form of the statutes in such case made and provided and against the peace and dignity of the State of Kansas." (Emphasis added.)

The trial court's instruction on aggravated burglary provided:

"To establish this charge, each of the following claims must be proved:
(1) That the defendant knowingly entered a residence located at 417 NW Fairchild;

(2) That the defendant did so without authority;

(3) That the defendant did so with intent to commit a felony or theft therein;

(4) That at the time there was a human being in the residence at 417 NW Fairchild; and

(5) That this act occurred between January 9th and January 11th, 1994, in Shawnee County, Kansas."

The theft charge which originally dealt with theft of Robinson's automobile was dismissed at the close of the State's case in chief. As Noriega argues, the aggravated burglary instruction failed to identify the felony intended to be committed. Noriega asserts that this case is similar to *State v. Linn*, 251 Kan. 797, Syl. ¶ 2, 840 P.2d 1133 (1992), where this court stated: "An instruction as to the offense of aggravated burglary is defective unless it specifies and sets out the statutory elements of the offense intended by an accused in making the unauthorized entry."

In *Linn*, the defendant was charged with felony murder, aggravated battery, and aggravated burglary. The underlying felony for the murder charge was aggravated burglary of a residence. At trial, the defendant requested that the felony-murder instruction specify aggravated burglary as the underlying felony and that the aggravated burglary instruction specify its underlying crime as theft. The State argued that the evidence supported theft, aggravated battery, or robbery as the underlying felony for aggravated burglary.

The trial judge's instruction stated that to find the defendant guilty of aggravated burglary, the jury had to find that Linn entered or remained in the residence "with the intent to commit a felony or theft therein." 251 Kan. at 799. The defendant objected to the instruction on the ground there was no evidence of any intent to commit a crime other than theft. On appeal, Linn argued that the judge's instruction to the jury failed to identify a specific felony he allegedly intended to commit inside the home and to set out the statutory elements of theft. The *Linn* court observed that an instruction as to aggravated burglary is defective unless it specifies and sets out the statutory elements of the offense intended by the accused in making the unauthorized entry. The *Linn* court found that the trial court's failure to specify the underlying felony or felonies and their elements prevented the jury from rendering a law-

ful verdict and was an error of constitutional magnitude, depriving Linn of a fair trial. 251 Kan. at 802.

We agree that it would be error if the district court had failed to set out the statutory elements of the intended felony when instructing on aggravated burglary. See *State v. Richmond*, 258 Kan. 449, Syl. ¶ 5; *State v. Watson*, 256 Kan. 396, 404, 885 P.2d 1226 (1994); and *State v. Maxwell*, 234 Kan. 393, Syl. ¶ 3, 672 P.2d 590 (1983). Here, the defendant fails to consider the instructions together and as a whole. Jury instructions are to be considered together and read as a whole, without isolating any one instruction. If the instructions properly and fairly state the law as applied to the facts in the case, and if the jury could not reasonably have been misled by them, the instructions do not constitute reversible error although they may be in some small way erroneous. *State v. Johnson*, 255 Kan. 252, Syl. ¶ 4, 874 P.2d 623 (1994).

The trial judge instructed the jury on count I of the complaint on the crime of aggravated burglary. Instruction No. 1 stated: "That the defendant did so with the intent to commit a felony or theft therein." Instruction No. 2 informed the jury that the defendant was charged with the crime of aggravated robbery. It then set out each of the claims the State must prove to establish this charge. Instruction No. 3 informed the jury that the defendant was charged with the crime of murder in the first degree (felony murder). The jury was informed that to establish this charge, each of the following claims must be proved: The defendant killed Sidney J. Robinson during the commission of the crimes of aggravated burglary or aggravated robbery. Instruction No. 3 noted that the elements of aggravated burglary and aggravated robbery were set forth in Instructions No. 1 and 2. The jury found the defendant guilty of the crimes of aggravated burglary, aggravated robbery, and first-degree felony murder.

When the three instructions are read together, we are able to conclude that the jury was properly instructed and to determine that the defendant entered the residence with the intent to commit the felony of aggravated robbery. Noriega's claim that the aggravated burglary instruction did not specify the felony he intended to commit upon entering the residence is without merit.

Noriega also asserts that when alternative felonies are charged, and the jury does not expressly specify in its verdict which felony was the basis for the felony-murder conviction, the felony-murder conviction cannot stand if the evidence was not sufficient for conviction on both underlying felonies. He argues that because it is impossible to tell whether the jury relied upon a legally sufficient felony for the murder convictions, his conviction for felony murder must be vacated.

Here, the jury was instructed that it could find the defendant guilty of felony murder if it convicted Noriega of either aggravated burglary or aggravated robbery and was instructed that its verdict must be unanimous. On separate verdict forms the jury found the defendant guilty of both aggravated robbery and aggravated burglary. Because the evidence of the underlying felony convictions was sufficient, the felony-murder conviction stands.

### Modified *Allen* Instruction

Noriega next argues it was error for the trial court to provide a modified *Allen* instruction prior to the jury retiring to deliberate. Since he did not object to the instruction at trial, he must now establish that, even if the instruction was erroneous, the jury would have returned a different verdict in the absence of this instruction. The challenged instruction provided:

"As you know this case has been exhaustively tried by both sides. If you are unable to agree on a verdict, the Court will then declare a mistrial and this matter will have to be tried again to another jury. There is no reason to think that a jury better qualified than you would be chosen to try this case.

"The Court suggests that in your deliberations on the case that you listen to arguments of other jurors with an open mind and be disposed to be convinced by them and scrutinize your opinions in light of the evidence presented and the Court's instructions."

This instruction is a substantially modified version of the *Allen* instruction found at PIK Crim. 3d 68.12, which provides:

"This is an important case. If you should fail to reach a decision, the case is left open and undecided. Like all cases, it must be decided sometime. Another trial would be a heavy burden on both sides.

"There is no reason to believe that the case can be tried again any better or more exhaustively than it has been. There is no reason to believe that more evidence or clearer evidence would be produced on behalf of either side.

"Also, there is no reason to believe that the case would ever be submitted to 12 people more intelligent or more impartial or more reasonable than you. Any future jury must be selected in the same manner that you were.

"[These matters are mentioned now because some of them may not have been in your thoughts.]

"This does not mean that those favoring any particular position should surrender their honest convictions as to the weight or effect of any evidence solely because of the opinion of other jurors or because of the importance of arriving at a decision.

"This does mean that you should give respectful consideration to each other's views and talk over any differences of opinion in a spirit of fairness and candor. If at all possible, you should resolve any differences and come to a common conclusion [so that this case may be completed].

"You may be as leisurely in your deliberations as the occasion may require and take all the time you feel necessary."

Noriega points out that the PIK instruction does not refer to a mistrial and does not tell the jurors that they should be "disposed to be convinced" by other jurors. Noriega complains that the instruction as given was coercive, inaccurately defined the role of the jury, and improperly encouraged the jury to reach agreement by compromise and by surrender of their convictions.

The State asserts that the instruction was not erroneous because, as required, it was read to the jury prior to deliberations and the jury was not under pressure of deadlock at that time. The State also argues that the instruction did not urge but merely suggested that the jurors have open minds. The State notes there was no emphasis placed on this particular instruction and, in fact, the jury was instructed not to single out any particular instruction.

A similar instruction was challenged by the defendant in *State v. Whitaker*, 255 Kan. 118, 872 P.2d 278 (1994). The *Whitaker* court noted the challenged instruction and the PIK instruction are similar to the "dynamite" or *Allen* instruction. The *Whitaker* court observed that the former appellation is derived from the explosive effect the instruction engenders when given *after* a jury has been deadlocked. The giving of the instruction to a deadlocked jury sometimes immediately results in a verdict. 255 Kan. at 126 (citing

*United States v. Kahaner*, 317 F.2d 459 [2d Cir. 1963]). The term "*Allen* instruction" memorializes the case in which the United States Supreme Court approved the use of this type of instruction. *Allen v. United States*, 164 U.S. 492, 501-02, 41 L. Ed. 528, 17 S. Ct. 154 (1896). The *Allen* Court concluded that while the verdict of the jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by jury conference. The very object of the jury system is to secure unanimity by a comparison of views and by arguments among jurors. It certainly cannot be the law that each juror should not listen with deference to the arguments and with a distrust of that juror's own judgment, if the juror finds a large majority of the jury taking a different view of the case. See *Whitaker*, 255 Kan. at 126.

The State argues that Noriega failed to show that his substantial rights were prejudiced by the giving of the instruction. Noriega asserts that the fact that the jury requested a readback of a substantial portion of the testimony of Bobby Shutts and Tracy Anderson indicates that "rendering of the verdict was not a particularly simple, straightforward process." The record reflects, however, that the jury requested a readback of Shutts' testimony because it had trouble understanding Shutts' testimony due to frequent interruptions by Shutts' counsel. Furthermore, as the State asserts, the fact that the readback was requested merely indicates that the jury was careful in its deliberations.

As in *Whitaker*, here the instruction given does not require that jurors change their vote or compromise their individual judgments for the sake of reaching an agreement or judicial expediency. The instruction clearly applies to each member of the jury, not just those jurors espousing a minority view during deliberations. The instruction was given before the jury retired to deliberate; the instruction was not singled out or emphasized at any point. Noriega consented to the giving of the instruction. Although there were no compelling or articulable reasons to have departed from the PIK instruction, Noriega has not shown his right to a fair trial or a unanimous verdict was prejudiced.

### Burden of Proof Instruction

Noriega contends Instruction No. 12, the burden of proof instruction, was erroneous. The instruction stated:

"The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty until you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims made by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of any of the claims made by the State, you should find the defendant guilty."

The defendant did not object to the above instruction at trial; therefore, the clearly erroneous standard applies.

This instruction duplicates PIK Crim. 3d 52.02. The defendant first argues that the use of the words "not guilty" in the first portion of the instruction, rather than a statement that the defendant is presumed "innocent," is clearly erroneous because it dilutes the presumption of innocence guaranteed by statute and, in addition, does not accurately convey the law and the fundamental constitutional right to the presumption of innocence. As authority, defendant relies on the analysis of *Flores v. State*, 896 P.2d 558 (Okla. Crim. App.), *reh. denied* 899 P.2d 1162; *cert. denied* 133 L. Ed. 2d 450 (1995).

We note at the outset that there is no constitutional requirement that the jury be instructed on the presumption of innocence. *Kentucky v. Whorton*, 441 U.S. 786, 60 L. Ed. 2d 640, 99 S. Ct. 2088 (1979); *Taylor v. Kentucky*, 436 U.S. 478, 489-90, 56 L. Ed. 2d 468, 98 S. Ct. 1930 (1978). This same issue was decided in *State v. Pierce*, 260 Kan. 859, 869-70, 927 P.2d 929 (1996), where we held that the instruction at issue preserves the defendant's presumption of innocence. We noted that we adopted an opposing view to that in *Flores* in *State v. Keeler*, 238 Kan. 356, 364, 710 P.2d 1279 (1985), where we held that "not guilty" was preferable to "innocent" in an instruction to the jury. 260 Kan. at 860.

In *Pierce*, we also observed that in *State v. Johnson*, 255 Kan. 252, 259, 874 P.2d 623 (1994), the same challenge to PIK Crim. 3d 52.02 arose. In *Johnson*, we found *Keeler* to control the issue and held that the instruction was not clearly erroneous. *Keeler* and *Johnson* control here. We determine that the provisions of PIK Crim. 3d 52.02 accurately reflect the law of this State and properly

advise the jury in a criminal case of the burden of proof, the presumption of innocence, and reasonable doubt.

The defendant also argues that the use of "claims made by the State" in the burden of proof instruction rather than "elements of the crime" allowed the jury to make a finding of guilt based on other reasons than whether the prosecution carried its burden for each element of the crime. He asserts that this instruction violated his due process rights.

A similar argument was also made and rejected in *State v. Pierce*. Again, the defendant's argument fails to consider the instructions as a whole. Upon review of a challenged jury instruction, the instructions must be considered together and read as a whole without isolating any one instruction. If the instructions properly and fairly state the law as applied to the facts in the case, and if the jury could not reasonably have been misled by them, then the instructions do not constitute reversible error, although they may be in some small way erroneous. *State v. Johnson*, 255 Kan. 252, Syl. ¶ 4.

A consideration of the instructions as a whole given in this case verifies that the instruction complained of properly and fairly stated the law as applied to the facts and that the jury could not reasonably have been misled by the instruction. At no time in the trial court's instructions was the phrase "elements of the offense" used. Each time the trial court instructed on charges, it used the language "[t]o establish this charge, each of the following *claims* must be proved." (Emphasis added.)

The trial court instructed the jury that "[i]f you have a reasonable doubt as to the truth of any of the *claims* made by the State, you must find the defendant not guilty. If you have no reasonable doubt as to any of the *claims* made by the State, you must find the defendant guilty." (Emphasis added.) Clearly, the "claims made by the State" language refers directly to the "claims" the State must prove beyond a reasonable doubt to convict the defendant. The language used in the trial court's instruction clearly defined the responsibility of the jury. The language used is taken directly from PIK Crim. 3d 52.02. Following *Pierce,* we approve the language used as a clear statement of the burden of the State in criminal trials.

## SPEEDY TRIAL

Noriega next contends his statutory right to a speedy trial was violated. A person held in jail must be tried within 90 days after that person's arraignment. K.S.A. 22-3402(1). The relevant facts are: Noriega and Abel were bound over for trial and formally arraigned on December 15, 1994. Both remained in custody. The case was set for jury trial on February 13, 1995. On February 3, 1995, the State moved for a continuance on the grounds that, despite diligent efforts, it had been unable to secure the presence of Larry Baier and Bobby Shutts. Over defendant's objection, the district judge granted a continuance to April 3, 1995. See K.S.A. 22-3402(3)(c). In granting the continuance, which exceeded the statutory 90-day limitation, the district judge relied on the State's proffer that a warrant and subpoena had been issued for Shutts and that it had been unable to find or serve Baier because he had left the state. Subsequently, the defendant filed a motion to be discharged from prosecution, alleging that with respect to Baier, the district attorney investigator had filed a return of service with the clerk of the court indicating that he had personally served Baier with a subpoena on February 1, 1995.

Defendant, who had been held in jail more than 90 days after his arraignment, filed his motion to discharge pursuant to K.S.A. 22-3402. At the hearing on the motion, defendant presented evidence that, contrary to the State's proffer at the hearing on the motion for continuance, the State had not served a subpoena or warrant on Shutts prior to February 6, 1995. Defendant also presented evidence contradicting the State's proffer regarding the efforts to locate Baier. Based on these facts, the defendant argued that the continuance had been improperly granted because, in fact, no warrant or subpoena had been issued for Shutts and the State had not been diligent in securing the presence of either necessary witness.

The district judge agreed with defendant that the continuance had been erroneously granted and that the State's efforts in locating witnesses had been perfunctory and not diligent. The district judge, however, found that K.S.A. 22-3402(1), the 90-day speedy

trial statute, was not applicable in defendant's case because defendant was being held in jail on another charge, a probation violation. Therefore, the defendant was not being held solely on the charges in the instant case.

K.S.A. 22-3402(1) provides:

"If any person *charged with a crime and held in jail solely by reason thereof* shall not be brought to trial within ninety (90) days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3)." (Emphasis added.)

The district judge concluded that the defendant was entitled to be brought to trial pursuant to K.S.A. 22-3402(2), which provides a 180-day speedy trial period, therefore, the April 3, 1995, trial date was well within the statutory time frame.

A similar issue was recently addressed in *State v. Hill*, 257 Kan. 774, 895 P.2d 1238 (1995). In *Hill*, the defendant was on parole when charged with felony crimes on August 29, 1992. On August 31, 1992, the defendant's parole officer placed an arrest and detain order against the defendant for failure to comply with conditions of parole. Hill was held in jail on that order, as well as the new felony charges, until his trial on June 14, 1993, more than 90 days after his arraignment, which occurred on October 26, 1992. Hill's parole officer testified that the arrest and detain order would have remained in effect even if the State had dismissed the charges. The *Hill* court found that the district judge did not abuse his discretion in denying Hill's motion to dismiss on speedy trial grounds and that there was substantial competent evidence to support the district judge's determination that Hill was not held in jail solely on the charges therein. 257 Kan. at 778.

As in *Hill*, here Noriega was not held solely due to the charges in the murder case. The defendant asserts *Hill* does not apply and asks this court to make a distinction here because (1) he was held on a probation and not a parole violation and (2) he could have met the $2,500 bond in the probation violation case as opposed to the $100,000 bond in the murder case. We disagree. This logic

would create a distinction without a difference. K.S.A. 22-3402 makes no such distinctions.

"Probation" means a procedure under which a defendant, found guilty of a crime upon verdict or plea, is released by the court after imposition of sentence, without imprisonment except as provided in felony cases, subject to conditions imposed by the court and subject to the supervision of the probation service of the court or community corrections. K.S.A. 21-4602(c).

"Parole" means the release of a prisoner to the community by the Kansas Parole Board prior to the expiration of such prisoner's term, subject to conditions imposed by the board and to the Secretary of Corrections' supervision. Parole also means the release by a court of competent jurisdiction of a person confined in the county jail or other local place of detention after conviction and prior to expiration of such person's term, subject to conditions imposed by the court and its supervision. K.S.A. 21-4602(d).

Since the 90-day provision of K.S.A. 22-3402(1) applies only to a defendant charged with a crime who is being held in jail solely on such charge, *State v. Goss*, 245 Kan. 189, Syl. ¶ 1, 777 P.2d 781 (1989), *Hill* controls. Because Noriega was not solely being held in jail for the crime charged, he was not entitled to be brought to trial within 90 days after his arraignment. He was entitled to be brought to trial within 180 days after his arraignment. Therefore, Noriega's speedy trial rights were not violated.

Affirmed.