No. 78,808

STATE OF KANSAS, *Appellee,* v. JEROME KUYKENDALL, *Appellant.*
(957 P.2d 1112)

Opinion filed April 17, 1998.

*Rebecca E. Woodman,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with her on the brief for appellant.

*Joel W. Meinecke,* first assistant district attorney, argued the cause, and *Joan M. Hamilton,* district attorney, and *Carla J. Stovall,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant was convicted of one count of premeditated murder, two counts of aggravated assault, and one count of aggravated robbery. Defendant appeals, claiming the evidence was insufficient to support the premeditated murder charge, the aggravated robbery charge, and one of the aggravated battery charges. Defendant also argues the trial court's failure to give a cautionary informant's instruction sua sponte was clearly erroneous.

At approximately 8:30 p.m. on February 12, 1996, Laura Roettgen and Amanda and Virginia Cook were sitting in Roettgen's car outside a day care center about to leave. (The three women cleaned the day care center.) When they heard three "popping" sounds they determined were gunshots, they got down in the seats so as to not draw attention to themselves.

A few minutes later the three women noticed a person standing in a nearby alley. They could not identify the person or the person's sex, race, or what the person was wearing. Virginia Cook believed the person was carrying a gun because she saw light reflecting off an object in the person's right hand.

After the person crossed the street the women heard the rattling of a chain link fence. They saw two people struggling. One was holding the other in a headlock. Believing that the person who fired the shots was distracted, the women left the car and returned to the day care center.

Looking out the day care center window, the women saw a person at the corner of 6th and Lane casually walking east. Virginia Cook was not sure if it was the same person who was scuffling but assumed it was. Laura Roettgen believed it was the same person because one combatant wore an Oakland Raider's starter jacket. She described the individual wearing the Oakland Raider's starter jacket as a heavy-set black male.

Shortly thereafter Virginia and Amanda Cook left the day care center. As they drove away, they saw a body. They proceeded to a nearby hospital and notified the police. The police were dispatched at approximately 8:55 p.m. Police and emergency medical person-

nel arrived at the scene and emergency treatment was administered. The victim, Kerry Young, was transported to the nearby hospital where he died.

At the time of his death Young was wearing three pairs of sweatpants, tennis shoes, a t-shirt, a hooded sweatshirt, and a plaid jacket. Only the sweatshirt and jacket had pockets. Thirty four cents in loose change was removed from one of the pockets of the plaid jacket. Thirteen cents was laying in the driveway at the scene.

An autopsy revealed that a bullet entered the victim's back on the left side, travelled through muscle, the aorta, a renal artery, and a front rib and stopped just under the skin below the victim's right nipple. No gunpowder residue was found on the victim's skin or clothing. The coroner testified that this usually indicated the victim was shot from a distance of more than 3 to 5 feet.

Between 6 p.m. and 8:30 p.m. that evening, Kerry Young treated Rick Ashford and Roger Madison to a couple of games of bowling. After paying for the bowling, Young had returned his wallet to his right back pocket. After they finished bowling, on the way home, Young informed Madison and Ashford he had only 3 dollars so they were not going to be doing anything else. When the group split up, Young was heading home while the other two were walking to the home of another friend with whom they bowled that night.

At approximately 9 p.m., Madison and Ashford were walking south on Buchanan between 4th and 5th Streets when a black male they did not recognize approached them walking north on the sidewalk. When the man was approximately 2 feet away he pulled a gun, pointed it at Madison, and asked Madison if he "was tripping." Madison and Ashford responded that they were not. The man put the gun away, told them they were cool, and let them pass. After they took a few steps, the man asked them whether they believed his gun was loaded. Madison did not look back. Ashford responded that he believed the gun was loaded. As Ashford turned to continue on his way, the man fired the gun, apparently into the air. Ashford testified they took off running, and Madison said they quickly walked away.

Approaching 6th Street, Ashford and Madison heard sirens and saw police lights at 6th and Lane. They went to see what was going on and to inform the police about the shooting incident that had just occurred. There were numerous people at the scene. When Madison and Ashford saw the victim, they recognized him as Kerry Young.

That night, James Bullock was bartending at Goofies, located near St. Francis Hospital. Bullock's fiancee, Deanna Pershall, was there. Pershall testified that approximately 45 minutes after she had heard sirens, a black man opened up the door of the bar, stood in the doorway, flashed a handful of money for approximately 30 seconds, and then left. Bullock testified that the money appeared to be $100 bills.

At approximately midnight Martin Riley, who lives in an apartment at 6th and Lincoln, stated "Diz" knocked on his door. When Riley opened the door Diz proclaimed he had just shot a man. Diz asked Riley to hide him.

At trial, Ashford and Madison identified Kuykendall as the man who had accosted them. Bullock and Pershall testified Kuykendall was the person that had entered the bar and flashed money. Riley identified Kuykendall as Diz, the person who came to his apartment. Riley testified that Diz had stated that he had shot a man and asked if he could hide in Riley's apartment.

Defendant was arrested on February 27, 1997, and charged with three counts of aggravated assault (one was dismissed at preliminary examination), one count of aggravated robbery, and alternative counts of felony murder or premeditated murder. At trial the jury returned a verdict of guilty on the two aggravated assault charges, the aggravated robbery charge, and the premeditated murder charge. The jury found the defendant not guilty of felony murder.

On appeal, Kuykendall alleges his convictions for premeditated murder, aggravated robbery, and one count of aggravated assault should be overturned. Kuykendall did not appeal his conviction for aggravated assault of Madison. Kuykendall argues the evidence was insufficient to convict him and the trial judge erred in not instructing as to an informer's credibility.

## Insufficient Evidence

When the sufficiency of the evidence is challenged, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found without a reasonable doubt the defendant was guilty. *State v. Claiborne*, 262 Kan. 416, Syl. ¶ 5, 940 P.2d 27 (1997).

It is the function of the jury in a criminal case to determine the weight and credit to be given the testimony of each witness, whether expert or lay in nature. *State v. Grubbs*, 242 Kan. 224, Syl. ¶ 2, 747 P.2d 140 (1987). On appellate review, the credibility of witnesses will not be passed upon, conflicting evidence will not be weighed, and all questions of credibility are resolved in favor of the State. *State v. Jarmon*, 245 Kan. 634, 638, 783 P.2d 1267 (1989). This court looks only to the evidence which supports the verdict, and if the essential elements of the charge are supported by any competent evidence, the conviction must stand. *State v. Dorsey*, 224 Kan. 152, Syl. ¶ 4, 578 P.2d 261 (1978).

Murder in the first degree is the killing of a human being committed intentionally and with premeditation. K.S.A. 21-3401. A conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Smith*, 245 Kan. 381, 393, 781 P.2d 666 (1989). The evidence indicates that just prior to 8:55 p.m., an individual was in the alley behind Pizza Hut when he fired three shots at the victim. The State's theory is that Kuykendall was lying in wait behind Pizza Hut next to a dumpster when, after careful aim, he shot the victim and then robbed him. Lying in wait to shoot and rob someone is certainly consistent with having thought over the matter beforehand and is consistent with a conviction for premeditated murder.

Shortly after 8:55 p.m. Kuykendall, who was armed with a pistol, assaulted Ashford and Madison near the scene of the murder.

Approximately 45 minutes after the police had arrived at the scene of the murder, a black man opened up the door of a nearby bar, stood in the doorway, and flashed a handful of money for approximately 30 seconds and then left. Kuykendall was identified as that person.

Riley testified that Kuykendall, who he knew as Diz, came to Riley's apartment around midnight. Kuykendall stated that he had shot a man and asked if he could hide in Riley's apartment. After weighing the evidence, the jury believed the State's theory and convicted the defendant.

Aggravated robbery is the taking of property by force or threat of bodily harm. K.S.A. 21-3426; K.S.A. 21-3427. Kuykendall claims that there is no evidence that he took property from Kerry Young by threat of bodily harm or force.

Young left the bowling alley with money. Young was seen struggling with another man. Finally, when the police arrived on the scene, Young's wallet and money were missing. Shortly after the murder, defendant was seen flashing money in the doorway of a bar in the vicinity. Consequently, there is evidence upon which a rational jury could have concluded that defendant was guilty of aggravated robbery.

Aggravated assault is intentionally threatening to do bodily harm, with the apparent ability to cause bodily harm. That conduct resulted in immediate apprehension of bodily harm and that the defendant used a deadly weapon. K.S.A. 21-3410. Kuykendall argues that the gun was never pointed at Ashford and that Ashford never testified that he was in fear of immediate bodily harm.

Neither of Kuykendall's contentions are supported in the record. At trial, defense counsel asked Ashford whether the gun was ever pointed at him, to which Ashford replied, "Yes, the barrel was waved past my face." Defense counsel later asked whether this occurrence put Ashford "into shock." Ashford responded, "Yes, I was scared." From this evidence, a rational jury could find defendant guilty of aggravated assault.

After applying the proper standard to the evidence presented, the conviction for premeditated murder, aggravated robbery, and aggravated assault are affirmed.

## Instruction on Informant's Testimony

Kuykendall claims it was error for the trial judge not to give a cautionary instruction on the testimony of an informant to the jury. Kuykendall acknowledges that there was no request for such an

instruction at trial. The trial judge did instruct the jury that it was for it "to determine the weight and credit to be given the testimony of each witness." The judge also instructed: "You have a right to use common knowledge and experience in regard to the matter about which a witness has testified."

No party may assign as error the giving or failure to give a jury instruction unless he or she objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds for the objection, unless the instruction is clearly erroneous. K.S.A. 22-3414(3). The giving or failure to give a jury instruction is clearly erroneous only if the reviewing court reaches a firm conviction that absent the alleged error, there was a real possibility the jury would have returned a different verdict. *State v. Noriega*, 261 Kan. 440, Syl. ¶¶ 3, 4, 932 P.2d 940 (1997).

The instruction on informant's testimony is PIK Crim. 3d 52.18-A, which provides:

"You should consider with caution the testimony of an informant *who, in exchange for benefits from the State, acts as an agent for the State in obtaining evidence against a defendant*, if that testimony is not supported by other evidence." (Emphasis added.)

Kuykendall argues that he was entitled to the informant instruction regarding the testimony of Riley. Riley informed detectives that a couple of hours after the murder, Kuykendall entered his apartment, told him he had just killed someone, and needed to be hidden. Riley told no one about this incident until 3 days later, while in custody for 13 armed robberies. Riley wanted to trade information about the murder of Young for a detective's promise he would inform the federal authorities of Riley's cooperation.

The information Riley gave the detective was much different than what he testified to at Kuykendall's trial. At trial, Riley told the jury that he lied to the detective in an effort to curry favor. Riley testified that he was "messed up" on drugs when he talked to the detective.

The State argues that Riley does not qualify as an informer defined in *Noriega*, 261 Kan. 440, Syl. ¶ 6. *Noriega*'s facts are similar

to the facts of this case. There, an individual named Baier was arrested for parole violations. Baier was told by the police that if he cooperated with a murder investigation, the police would try to help Baier stay out of prison. Baier identified Noriega as one of the two perpetrators.

On appeal, Noriega argued the trial court's failure to give the jury a cautionary instruction was error. He asserted that because Baier's parole was not revoked, Baier was a paid informer. In response, the *Noriega* court observed an informant is an " 'undisclosed person who confidentially discloses material information of a law violation, thereby supplying a lead to officers for their investigation of a crime.' " 261 Kan. at 448 (citing Black's Law Dictionary 780 [6th ed. 1990]). It noted this definition does not include a person who supplies information after being interviewed by police officers, or who gives information as witnesses during the course of investigation.

The *Noriega* court observed that Baier was an individual who supplied information only after being interviewed by police officers. Baier later gave additional statements during the course of the investigation. The *Noriega* court determined the witness was not an informant and concluded that under the facts, the giving of a "paid" informant cautionary instruction was not required. 261 Kan. at 448.

PIK Crim. 3d 52.18-A states the jury should consider with caution the testimony of an informant *who, in exchange for benefits from the State, acts as an agent for the State in obtaining evidence against a defendant,* if that testimony is not supported by other evidence. Riley did not act as an agent for the State or obtain evidence. Although Riley was seeking a benefit he was not acting as an agent for the State to obtain evidence. Riley informed the State what Kuykendall had previously told him. Under the circumstances and facts the paid informant cautionary instruction was not required.

Affirmed.