No. 81,679

STATE OF KANSAS, *Appellee*, v. JOSE J. CHAVEZ, *Appellant*.

(4 P.3d 576)

Opinion filed April 21, 2000.

*Michael C. Brown*, of Michael C. Brown, P.A., of Mulvane, argued the cause and was on the brief for appellant.

*Lesley A. McFadden*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Jose J. Chavez appeals from his conviction of first-degree felony murder, K.S.A. 21-3401(b), claiming that there is insufficient evidence to support his conviction. Upon review of all the evidence, viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt and affirm.

The partially nude body of Omar Escobar was discovered in a ditch by a jogger in Sedgwick County. The body was lying face down wearing only pants, one shoe, and no shirt. An autopsy revealed that Escobar had been beaten about the face and had died by strangulation. No identification was found on the body. Escobar was eventually identified by his brother Carlos.

Carlos reported Escobar was missing for approximately 1 week. Carlos had gone with Escobar to pick up his paycheck the previous Friday. After cashing the check, they went to a pawn shop and purchased a ring and a necklace. Escobar wore the gold necklace. The next time Carlos saw Escobar was the following Saturday, April 12, at 7:30 p.m. On that evening, Escobar went out with a friend. Escobar's niece, Angela Benninger, drove Escobar and his friend to the Side Pocket Lounge at approximately 10 p.m. Benninger

told them she would not return to pick them up and that they should find their own way home. The bartender testified Escobar and his friend were at the bar on the night Escobar disappeared. According to the bartender, Escobar's friend left early but Escobar stayed until the bar closed. Escobar eventually left with three other Hispanic men. The bartender identified the defendant and Miguel Rodriguez as two of those men.

After entering into a plea agreement with the State, Rodriguez testified against the defendant. Rodriguez testified as follows: He and Chavez gave Escobar a ride. Escobar sat between Chavez and Rodriguez in the cab of Rodriguez' pick-up truck. While Rodriguez was driving, a confrontation developed between Chavez and Escobar. Chavez accused Escobar of being involved in a gang incident the year before in which Chavez was stabbed. The argument turned into an altercation in the cab of the truck. Chavez had a gun. He told Rodriguez to keep driving. Eventually, Rodriguez stopped the truck on a dirt road. Chavez dragged Escobar from the passenger side of the truck. The fight continued outside while Rodriguez remained in the truck. When Chavez returned he had a shirt in his hand. He told Rodriguez that Escobar had run away. Rodriguez turned the truck around and headed west. Chavez threw the shirt out the window. Chavez then confessed he killed Escobar.

The two drove to Rodriguez' home. It was early morning. Rodriguez woke his wife, Sharlene, and told her Chavez killed someone. According to Sharlene, Chavez confessed the murder to her as well. Chavez told her he had killed someone, taken the victim's wallet and necklace, and left him face down in a ditch. Sharlene also testified Chavez complained that Rodriguez just sat in the truck and did not help him.

Chavez' wife Pamela also testified. She said when Chavez returned home that Sunday morning he said he had done something he should not have. Chavez later told his wife he was present when Escobar was murdered.

Chavez testified in his own defense. He claimed Rodriguez tried to sell a handgun at the bar. Rodriguez was asked to leave and Chavez followed. When he got outside, Chavez observed Escobar unconscious in the cab of Rodriguez' truck. Rodriguez then asked

Chavez to get in the truck. While driving, Escobar awakened. Chavez claimed that Rodriguez then began striking Escobar. Rodriguez eventually stopped the truck, pulled Escobar's shirt over his head, and strangled him inside the cab of the truck. Afterward, Rodriguez went around to the passenger's side of the truck, pulled Escobar out, and threw him in the ditch. As they drove away, Rodriguez threw Escobar's shirt out the window. Chavez admitted being heavily intoxicated at the time of the crime. However, he denied ever having any conversations with Sharlene regarding Escobar.

Chavez also called Johnny Valenzuela to testify. Valenzuela shared a cell with Rodriguez at the Sedgwick County Detention Facility. Valenzuela said Rodriguez told several stories about the murder, all of which were inconsistent with his testimony at trial. On cross-examination, Valenzuela admitted that he had shared a cell with Chavez 3 years earlier and was currently sharing a cell with Chavez.

At the close of evidence, the jury was instructed on first-degree murder, second-degree murder, and voluntary manslaughter as a lesser included offense. The jury found Chavez guilty of first-degree murder. He was sentenced to 15 years to life in prison.

### Sufficiency of Evidence

The sole question raised by this appeal is whether there is sufficient evidence to support the defendant's conviction. Our standard of review is well established. When the sufficiency of the evidence is challenged, the question is whether, after a review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Johnson*, 266 Kan. 322, 326, 970 P.2d 990 (1998).

### Discussion and Analysis

The defendant's sole argument is that the testimony of the key prosecution witness, Miguel Rodriguez, is unbelievable. According to the defendant, since the only evidence of his guilt is unbelievable, there was insufficient evidence to support his conviction of first-degree murder. In support of his argument, the defendant

asserts that (1) Rodriguez' testimony was inconsistent with the physical evidence; (2) his own testimony is consistent with the evidence; and (3) Rodriguez' testimony is not credible because of his agreement with the State to testify in return for a reduced charge. The defendant acknowledges that an appellate court may not weigh evidence or pass on the credibility of witnesses. However, he asserts "one can hardly overlook the lack of truthfulness in the testimony of Miguel Rodriguez."

The defendant's argument lacks merit. He asks this court to do the very thing he acknowledges it may not do—act as a jury. We do not weigh the evidence or determine issues involving the credibility of witnesses testifying at trial. We view the evidence in the light most favorable to the prosecution. *State v. McCray*, 267 Kan. 339, Syl. ¶ 3, 979 P.2d 134 (1999); *State v. Lyons*, 266 Kan. 591, Syl. ¶ 3, 973 P.2d 794 (1999); *State v. Kuykendall*, 264 Kan. 647, Syl. ¶ 3, 957 P.2d 1112 (1998); *State v. Orr*, 262 Kan. 312, 327, 940 P.2d 42 (1997).

In addressing the defendant's arguments, we note that Rodriguez' testimony is not necessarily inconsistent with the physical evidence. The defendant complains that forensic experts found Escobar's boot print on the interior passenger side window of Rodriguez' truck. The defendant argues that the existence of this boot print shows Rodriguez was lying. The defendant contends it would be impossible for the boot print to be on the window if events happened as Rodriguez described. Rodriguez never testified that Escobar's foot kicked the window while Escobar and the defendant fought. The defendant argued that the boot print was only consistent with his story that Rodriguez strangled Escobar while Rodriguez sat in the driver's seat and Escobar lay on his back with his legs kicking.

Nevertheless, it is entirely possible that Escobar kicked the passenger side window while engaged in the fight with the defendant. It is neither illogical nor inconsistent with the evidence to conclude that Escobar might have attempted to kick the defendant while fighting in the cab of the truck.

In this case, the defendant's testimony was controverted not only by Rodriguez but also by Sharlene. While it is apparent that these

two witnesses had a motive to place blame on the defendant, this court, according to the well-established standard of review, is not free to assess the impact of that motive on their testimony. See *Aikins,* 261 Kan. 346, 391-92, 932 P.2d 408 (1997). It is not the function of an appellate court to weigh testimony or pass on credibility. *State v. Dunn,* 249 Kan. 488, 491, 820 P.2d 412 (1991). All questions of credibility are to be resolved in favor of the State. *State v. Clemons,* 261 Kan. 66, Syl. ¶ 4, 929 P.2d 749 (1996).

Finally, we do not find Rodriguez' testimony lacking in credibility merely because Rodriguez testified in exchange for a deal with the State. See *Dunn,* 249 Kan. at 491. The jury was aware of the deal Rodriguez obtained in exchange for his testimony and nevertheless credited his version of what occurred. An appellate court cannot second guess that determination as it is squarely in the province of the jury to make. See *State v. Noriega,* 261 Kan. 440, 446, 932 P.2d 940 (1997); *State v. Cooper,* 252 Kan. 340, 347, 845 P.2d 631 (1993). " '[A] jury is not bound to accept the defendant's version of the [facts] in question and, having convicted the defendant, the jury is presumed to have believed the State's evidence and to have drawn from it all inferences favorable to the State.' " *Aikins,* 261 Kan. at 392 (quoting *State v. Brunson,* 13 Kan. App. 2d 384, Syl. ¶ 2, 771 P.2d 938, *rev. denied* 245 Kan. 786 [1989]). Moreover, there is evidence to corroborate Rodriguez' testimony including (1) a detective testified that Rodriguez told the same story twice before he was offered the plea bargain by the State; and (2) Escobar's shirt was found on the opposite side of the road as his body. This is consistent with Rodriguez' story that after he turned the truck around and headed back in the direction from which it came, the defendant threw the shirt out the window. If Rodriguez had thrown the shirt out, it would have landed on the same side of the road as Escobar's body.

Both Chavez and Rodriguez admitted being present when Escobar was killed. The only question was whose story to believe about the murder. The jury believed Rodriguez. Rodriguez' testimony was corroborated by his wife, Sharlene, and to a lesser extent by the defendant's own wife. Under these circumstances, a rational factfinder could conclude beyond a reasonable doubt that the de-

fendant murdered Escobar. The essential elements of the crime are supported by competent evidence. See *Kuykendall*, 264 Kan. at 651.

Affirmed.