No. 84,054

STATE OF KANSAS, *Appellee*, v. VICTOR J. SAENZ, *Appellant*.

(22 P.3d 151)

Opinion filed April 27, 2001.

*Randall L. Hodgkinson*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the briefs for appellant.

*Michael A. Russell*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant Victor J. Saenz was convicted of second-degree murder, an off-grid felony. The trial court imposed a life sentence without possibility of parole for 10 years. Defendant appeals, claiming he is entitled to a new trial because a State's witness lied in anticipation of a release from custody, and because the trial court failed to (1) instruct the jury to view with caution the testimony of a State's witness; (2) exclude evidence of weapons not involved in the crime; (3) answer the jury's question in open court; (4) properly place the burden of proof; and (5) instruct the jury regarding eyewitness identification.

On January 13, 1997, while seated in a car, Marcos Granjada, Jesus Quezada, Manuel Lozano, and Rene Ceballo provoked and threatened Saenz in a bar parking lot in Kansas City, Kansas. Quezada was the driver; Granjada rode in the front passenger seat; and Lozano and Ceballo rode in the back seat. Granjada pointed a gun at Saenz and said, "[Y]ou are going to get it." The four men then drove off at a high rate of speed.

According to Lozano, when their car stopped at 7th and Kansas Avenue, a car driven by Saenz pulled up beside them on the right. Saenz rolled down the window, pointed a gun, and started shoot-

ing. Granjada ducked, and Quezada was struck by a bullet. Lozano counted approximately five shots. Granjada fired back.

Quezada was injured. Granjada drove away from the scene to the hospital, pursued by police. While en route to the hospital, Granjada threw a .380 caliber handgun out the window. Quezada died at the hospital as a result of the gunshot wound.

Later that morning, 2 to 4 hours after the murder, Jackson County police officers stopped a vehicle driven by Saenz for a traffic violation. There was one passenger in Saenz' car. While approaching the car, the officer observed the men reach under the front seat. The officer suspected that the men were reaching for guns and instructed them to "freeze." When a backup officer arrived, the second officer sounded his siren briefly. The men jumped out of the stopped car and raised their hands. The officers ordered the men to the rear of the car and frisked them for weapons. During the search of Saenz, the officers discovered six 9 mm bullets, a .380 caliber bullet, a 9 mm handgun, and a .38 caliber handgun. The officers later found another live .380 caliber bullet under the seat of Saenz' car.

Several days later from a photo array, Lozano identified Saenz as the driver who fired shots at his car. The State charged Saenz with intentional second-degree murder. Saenz was convicted and sentenced to imprisonment without eligibility for parole for 10 years.

### Failure to Disclose Witness' Reason for Testifying

Saenz claims the trial court erred in failing to grant his motion for new trial based on information that a State's witness, Sergio Saldana, lied at trial as to the charges against him in anticipation of a favorable recommendation from the State regarding his release from custody for a prior conviction in exchange for his testimony. The granting of a new trial is a matter which lies within the sound discretion of the trial court, and appellate review of a trial court's decision denying a new trial is limited to whether the trial court abused its discretion. *State v. Griffin*, 262 Kan. 698, Syl. ¶ 2, 941 P.2d 941 (1997). A trial court can grant a new trial based on newly discovered evidence where (1) the defendant can show that the

evidence could not with reasonable diligence have been produced at trial, and (2) the evidence is of such materiality that it would likely produce a different result at a new trial. *Taylor v. State*, 251 Kan. 272, 288, 834 P.2d 1325 (1992).

At trial, the State called Saldana, who had been incarcerated with Saenz after Saenz was arrested for the murder of Quezada, as a witness. Saldana was asked by the prosecutor, "Would you tell us what your current charges are?" Saldana responded that he was incarcerated on charges of three misdemeanor failures to appear, a felony habitual driving, and a felony driving while suspended. When questioned, Saldana denied that anyone offered him anything or made any promises in exchange for his testimony. When asked why he agreed to testify, Saldana replied, "Well, I have been here [the Wyandotte County Jail] for five months here, and I turned my life around over to God; and in order for me to do so, I really believe I have to get rid of everything bad I know or done, to be able to make amends, to be able to be forgiven, so I could really be accepted by God."

Saldana testified that he and Saenz were in the same pod in the jail, which enabled them to have contact with each other during the day. On one occasion, Saldana heard Saenz say that he had not intended to kill Quezada; he was trying to shoot the other person in the car.

On cross-examination, the defense attorney explored the possibility that Saldana was anticipating favorable treatment from the State in return for his testimony. Saldana stated that the State had agreed to drop one felony traffic count in exchange for his plea to the other felony traffic count. At the time of his testimony, Saldana had not yet pled to the charge. Saldana also stated that as a result of his testimony in Saenz' trial, his life would be in danger if he went to prison, and that since agreeing to testify, he had been moved to protective custody. Court documents indicated that Saldana was in jail at the time of his testimony for violating his probation on an aggravated battery conviction. Saldana had shot someone with a shotgun.

After Saenz was convicted, he moved for a new trial, alleging that Saldana had not been truthful when he testified that the only

pending cases against him were the two felony traffic offenses and the failure to appear charges. To show that Saldana misled the jury regarding his motivation for testifying, Saenz introduced court records which indicated that Saldana was released from the aggravated battery charge and jail the day after he had testified. Saenz alleged that Saldana had received a benefit for his testimony that was not disclosed to the jury and was relevant for the jury in weighing his testimony.

The prosecutor admitted that prior to trial he knew that Saldana had a conviction for aggravated battery, but because aggravated battery is not a crime which reflected on Saldana's character for truthfulness, during the trial he had carefully limited his questions to Saldana about his pending charges to avoid the disclosure of that fact to the jury. See K.S.A. 60-421.

The attorney who previously represented Saldana on the aggravated battery and other charges was called as a witness for the prosecution. Saldana's former attorney testified that he set up the meeting between Saldana and the prosecutor after Saldana disclosed to him that Saldana had information on Quezada's murder. The attorney testified that the prosecutor made it clear that the State offered no promises in exchange for Saldana's testimony. The prior attorney stated that he and the prosecutor both believed that it was not possible to obtain favorable treatment for Saldana on the aggravated battery conviction because Saldana's probation had previously been revoked and Saldana was in the custody of the Department of Corrections. Saldana had remained at the county jail because the State wanted to dispose of the outstanding traffic offenses and failure to appear charges before Saldana was transported to prison. The day after Saldana testified in Saenz' case, Saldana was taken before Judge Johnson (Judge Bukaty presided over Saenz' trial), who reinstated Saldana's probation on the aggravated battery conviction.

Saenz introduced the docket sheet from Saldana's aggravated battery case. The docket sheet indicated that after Saldana's probation was reinstated by the district judge, it was noted that Saldana's probation had expired; therefore, the case was closed. The journal entry stated:

" 'The defendant [Saldana] recently testified in a homicide case, which testimony helped the State get a conviction. Defendant is now exposed to retribution from others for testifying and parties agree that continued incarceration is dangerous for the defendant. By agreement of the parties, the probation revocation of January 12, 1999, is set aside and probation is reinstated. Since probation period has expired, this case is closed.' "

The judge denied Saenz' motion for new trial, stating:

"Obviously, if this arrangement had been made with Mr. Saldana prior to the trial, and the jury was misled about it, I would not hesitate to sanction such conduct by the State and grant a new trial, but that is not the evidence before me. So the motion for new trial is overruled."

The trial judge asked Saenz' defense attorney if, at the time of trial, he knew the reason Saldana was in jail. The defense attorney responded that the prosecutor told him that Saldana was in jail on traffic offenses. The prosecutor asserted that he had also informed Saenz' defense attorney that Saldana was held in jail on an aggravated battery parole violation.

On appeal, Saenz asserts that the trial judge erred in denying his motion for new trial because the jury was not aware that Saldana perjured himself when he failed to disclose that he was incarcerated for probation revocation on the aggravated battery charge, and the information that Saenz stood to benefit from this fact was newly discovered evidence bearing on a witness' credibility. The State argues that Saldana had not perjured himself by failing to disclose that he was incarcerated for violating probation on a prior aggravated battery conviction, and even if Saldana was untruthful, the fact that Saldana was incarcerated for a prior aggravated battery conviction was not material to Saenz' guilt or innocence.

In *Napue v. Illinois*, 360 U.S. 264, 269-70, 3 L. Ed. 2d 1217, 79 S. Ct. 1173 (1959), an accomplice witness testified against the defendant and stated he had received no promise of consideration in exchange for his testimony. The State knew this was false but did nothing to correct it. The Supreme Court stated:

"[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment. [Citations omitted.] The same result obtains when the State, although not

soliciting false evidence, allows it to go uncorrected when it appears. [Citations omitted.]

"The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend. As stated by the New York Court of Appeals in a case very similar to this one, *People v. Savvides*, 1 N.Y.2d 554, 557, 136 N.E.2d 853, 854—855; 154 N.Y.S.2d 885, 887:

'It is of no consequence that the falsehood bore upon the witness' credibility rather than directly upon defendant's guilt. A lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth. . . . That the district attorney's silence was not the result of guile or a desire to prejudice matters little, for its impact was the same, preventing, as it did, a trial that could in any real sense be termed fair.' "

Perjury is intentionally, knowingly, and falsely swearing, testifying, affirming, declaring, or subscribing to any material fact upon any oath or affirmation legally administered in any cause, matter, or proceeding before any court, tribunal, public body, notary public, or other officer authorized to administer oaths. K.S.A. 2000 Supp. 21-3805(a). In order to constitute perjury under 21-3805, the false testimony must be on a material matter. *State v. Rollins*, 264 Kan. 466, Syl. ¶¶ 2, 3, 957 P.2d 438 (1998).

Because aggravated battery is not a crime bearing on Saldana's character for truthfulness, Saldana's aggravated battery conviction is material only if it relates to his bias or motive for testifying falsely against Saenz. It is also clear that the State did not contest Saldana's probation reinstatement for the aggravated battery conviction, which occurred after Saenz' trial. There is no doubt that Saldana received favorable treatment from another judge as a result of his testimony. We note the other judge granted Saldana's motion for probation reinstatement out of concern for Saldana's welfare in prison for testifying against Saenz. Neither Saldana nor the State was aware prior to Saldana's testimony for the prosecution that Saldana would later receive favorable treatment from Judge Johnson.

We also note that Saldana's testimony was not the only evidence against Saenz. At trial, Lozano, a passenger in Quezada's car, identified Saenz as the shooter. Lozano, who knew Saenz, testified he recognized Saenz at the shooting and at trial identified him as the shooter. Therefore, even if the jury had been apprised that Saldana stood to receive favorable treatment from the State in exchange for his testimony, that information would not have changed the result of the trial.

### Failure to Give Informant Cautionary Instruction

Saenz contends that the trial court erred in failing to give a cautionary instruction regarding the testimony of Saldana. Saenz did not request such an instruction at trial.

No party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds of his or her objection, unless the instruction or the failure to give the instruction is clearly erroneous. K.S.A. 2000 Supp. 22-3414(3). Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred. *State v. Henry*, 263 Kan. 118, 131, 947 P.2d 1020 (1997).

Saenz urges this court to adopt the Oklahoma Criminal Court of Appeals' restrictions on "jailhouse informant" testimony. In *Dodd v. State*, 993 P.2d 778 (Okla. Crim. 2000), the Oklahoma court determined that the reliability of jailhouse informant testimony can be determined by requiring courts to take a closer look at the quality of the evidence, mandating disclosure of evidence of possible deals and issuing a cautionary jury instruction if questionable practices arise. The Oklahoma court was concerned about reliability problems with jailhouse informants, who often elicit or create statements from the defendant with the expectation of some benefit. 993 P.2d at 783.

The *Dodd* court recognized that the Constitution of the United States prohibits a jailhouse informant from testifying to a defendant's statements when the informant works for the government and

"deliberately elicits" or coerces statements related to a crime for which an accused has been indicted. However, the *Dodd* court concluded that there are reliability problems in all informant statements. Whether the informant was already working for the State or whether he or she anticipated some future benefit from eliciting incriminating statements on his or her own initiative, the informant's initial motivation is the same. The court stated that "while the state action affected by such a government/informant relationship triggers careful constitutional scrutiny, it permits equally insidious reliability problems to escape attention [of the jury]." 933 P.2d at 783-84.

The *Dodd* court adopted a procedure to ensure the prosecution completely disclosed all relevant information concerning an informant-witness' credibility that defense counsel would be prepared to cross-examine the witness:

"At least ten days before trial, the state is required to disclose in discovery: (1) the complete criminal history of the informant; (2) any deal, promise, inducement, or benefit that the offering party has made or may make in the future to the informant; (3) the specific statements made by the defendant and the time, place, and manner of their disclosure; (4) all other cases in which the informant testified or offered statements against an individual but was not called, whether the statements were admitted in the case, and whether the informant received any deal, promise, inducement, or benefit in exchange for or subsequent to that testimony or statement; (5) whether at any time the informant recanted that testimony or statement, and if so, a transcript or copy of such recantation; and (6) any other information relevant to the informant's credibility." 993 P.2d at 784.

This court recently examined the circumstances under which an informant instruction should be given in *State v. Kuykendall*, 264 Kan. 647, 957 P.2d 1112 (1998). In that case, a friend of the defendant, in the hope of influencing an unrelated case, offered to trade information that the defendant had told him regarding a murder if the State would inform federal authorities of his cooperation. The *Kuykendall* court noted that an informant acts as an undisclosed agent for the State when he or she acts to obtain evidence against the defendant in exchange for benefits from the State. The court stated that a jury should be instructed to consider with caution the testimony of such an informant. 264 Kan. at 654. Because Kuykendall's friend had not been requested to act as an agent for

the State to obtain evidence against the defendant, the *Kuykendall* court held that the "paid" informant cautionary instruction was not required.

The paid informant cautionary instruction, PIK Crim. 3d 52.18-A, complies with the constitutional prohibition against using the testimony of a witness who acts on behalf of the State in eliciting evidence from the defendant in exchange for receiving benefits from the State. Here, because Saldana did not act as an agent to obtain evidence against Saenz, a paid informant cautionary instruction was not required.

### Evidence of Weapons

After the traffic stop, Saenz was arrested and searched. One of the bullets found on Saenz' person was .380 caliber, the same caliber that killed Quezada. Police officers then searched the car and found a 9 mm handgun, a .38 caliber handgun, and a Remington .380 bullet which could not be linked to any bullet at the scene of the shooting. Neither of the guns could have fired the bullet that caused Quezada's death.

Prior to trial, Saenz moved that evidence of his arrest and weapons found in his vehicle when arrested be excluded from trial because they were not related to the charged offenses. At the hearing on the motion in limine Saenz asserted that the probative value of this evidence was outweighed by the prejudice inherent in the evidence. The State argued that because of the proximity in time to the homicide, the evidence constituted res gestae evidence, *i.e.,* events at issue, or other events contemporaneous with them. The trial court denied the defendant's motion to suppress.

On appeal, Saenz contends that the trial court erred in admitting the evidence obtained in the traffic stop because it was irrelevant, prejudicial, and improper character evidence.

K.S.A. 60-445 provides:

"Except as in this article otherwise provided, the judge may in his or her discretion exclude evidence if he or she finds that its probative value is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered."

When a question arises as to whether evidence at trial is unfairly prejudicial, the trial court has an obligation to weigh the probative value of the evidence. When the prejudicial effect of the evidence on the trier of fact outweighs the probative value of the evidence, the evidence should be excluded. *State v. Lumley*, 266 Kan. 939, Syl. ¶ 5, 976 P.2d 486 (1999).

We note that except as otherwise provided by statute, constitutional prohibition, or court decision, all relevant evidence is admissible. K.S.A. 60-407(f); *State v. Smallwood*, 264 Kan. 69, 84, 955 P.2d 1209 (1998). The admission of evidence lies within the sound discretion of the trial court. An appellate court's standard of review regarding a trial court's admission of evidence, subject to exclusionary rules, is abuse of discretion. One who asserts that the court abused its discretion bears the burden of showing such abuse of discretion. *Lumley*, 266 Kan. at 950.

When a motion in limine or a motion to suppress is denied, the moving party must object to the evidence at trial to preserve the issue on appeal. *State v. Jones*, 267 Kan. 627, 637, 984 P.2d 132 (1999). Saenz did not object to the admission of the evidence at trial. In fact, prior to admitting the evidence, the trial court specifically asked the defense if it had any objections. Other than objecting to the document the officer used to record the items found in the search, the defense stated it had no objections. Because the evidence was not objected to at trial, the defense did not preserve the issue for appeal. Therefore, this issue fails.

## Jury Question

The trial court instructed the jury on voluntary manslaughter, an intentional killing upon a sudden quarrel or in the heat of passion. During jury deliberations, the jury sent the following question to the trial court: "Please more specifically interpret the phrases 'sudden quarrel'/'heat of passion.' We are unsure whether there is a specific time limit required to fit these definitions, *i.e.* would the shooting have to have occurred in the parking lot to fulfill this definition." The trial court realized it had failed to define "heat of passion" in the initial jury instructions. In the presence of Saenz,

the court proposed to give the jury a written instruction, stating the definition of "heat of passion" found in PIK Crim. 3d 56.04(e):

"Heat of passion means any intense or vehement emotional excitement which was spontaneously provoked from circumstances. Such emotional state of mind must be of such degree as would cause an ordinary person to act on impulse without reflection."

Saenz had no objection. The written answer was sent to the jury.

Saenz first contends that the trial court erred in providing a written instruction to the jury without also reading the instruction in court in the presence of the defendant. Secondly, he contends that the instruction given was insufficient to satisfy the jury's question. As authority for his first argument that a note is an impermissible method of answering a jury question, Saenz relies on *State v. Norris*, 10 Kan. App. 2d 397, 402, 699 P.2d 585 (1985).

In *Norris*, the trial judge did not read the jury instructions to the jury. Following a readback of testimony requested by the jury, defense counsel moved for a mistrial because the judge had failed to read the instructions to the jury. The motion was denied, and the defendant was convicted. He appealed, claiming the judge had not properly instructed the jury. The *Norris* court observed: "Instruction of the jury is one of the most fundamental duties of the court and it is only through their oral delivery that the court can be assured that each member of the jury has actually received all of the instructions." 10 Kan. App. 2d at 401. The *Norris* court noted the dangers involved in only providing written instructions, including differing literacy levels, reading comprehension, and possible biased delivery by jurors reading the instructions. It concluded the trial court erred in failing to orally instruct the jury and that error prejudiced the defendant.

The State distinguishes *Norris* by pointing out that in *Norris*, the trial court failed to read the entire text of the jury instructions to the jury. The State compares the instant case to *State v. Coyote*, 268 Kan. 726, 1 P.3d 836 (2000), which concerned a jury question. During its deliberations, the jury sent the following question to the trial judge: "To determine 'intentionally,' does the definition have to include all of these words ('knowing,' 'wilful,' 'purposeful' & 'on

purpose')?" 268 Kan. at 731. The judge briefly discussed the question with defendant's trial counsel in chambers. The defendant was not present. The judge then wrote the word "No" on the note and returned it to the jury. On appeal, the defendant contended that he was denied a fair trial when the trial judge responded to the written question outside his presence. The *Coyote* court found that there was no question that the trial court's failure to answer the jury's question in the presence of the defendant violated the defendant's statutory and constitutional rights. However, the court found the error to be harmless because there was little, if any, likelihood that the single written word "No" sent to the jury changed the result of the trial. 268 Kan. at 734-35.

K.S.A. 22-3420(3) provides:

"After the jury has retired for deliberation, if they desire to be informed as to any part of the law or evidence arising in the case, they may request the officer to conduct them to the court, where the information on the point of the law shall be given, or the evidence shall be read or exhibited to them in the presence of the defendant, unless he voluntarily absents himself, and his counsel and after notice to the prosecuting attorney."

It should be noted that the statute provides that the answer to questions "shall be read" to the jury in the presence of the defendant.

In *State v. Bell*, 266 Kan. 896, 919-20, 975 P.2d 239 (1999), the jury sent a note to the judge during deliberations requesting more information regarding an instruction. The trial court consulted with both attorneys. The defendant was not present. The defendant's attorney objected to the giving of any supplemental instruction. The judge answered the jury's question in writing. On appeal, the defendant contended that the court's written instruction outside his presence violated his Sixth Amendment right to be present at all stages of the trial. The *Bell* court observed that the correct procedure for a trial court to follow when answering a question from a deliberating jury is set forth in K.S.A. 22-3420(3) and requires that once the jury has begun deliberations, any questions from the jury concerning the law or evidence pertaining to the case must be answered in open court in the defendant's presence, unless the defendant is absent voluntarily. 266 Kan. at 919. The *Bell*

court found that the defendant's Sixth Amendment right to be present had been violated by the court's procedure in answering the jury question, but after applying the constitutional error standard, it held that the error was harmless. 266 Kan. at 920.

Whether a defendant objects to the manner in which the judge answers a jury's question, it is important to examine the content of the judge's response before determining whether the failure to read the response to the jury was reversible error. As noted above, Saenz did not object to the delivery of the note to the jury or the content in the judge's answer to the jury.

"[N]o party may assign as error the giving or failure to give an instruction unless. he or she objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds of his or her objection, unless the instruction or the failure to give the instruction is clearly erroneous. K.S.A. 22-3414. Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred." *State v. Henry*, 263 Kan. 118, 131, 947 P.2d 1020 (1997).

The court's response to the jury's question was in conformity with the PIK instructions on heat of passion and sudden quarrel. The jury did not request further clarification.

In conclusion, the concerns of the *Norris* court regarding the potential danger and confusion inherent in providing the jury with written-only instructions is not so apparent where the written instruction is in response to a single question by the jury. Here, although the manner of the judge's response was erroneous, Saenz reviewed the written instruction and did not object to it. Under these circumstances, any error in failing to read the instruction to the jury was harmless.

## Improper Burden of Proof

Saenz contends that the trial court's instructions on voluntary manslaughter improperly shifted the burden of proving mitigating circumstances to the defendant. The instruction provided:

"In determining whether the defendant is guilty of murder in the second degree-intentional, or murder in the second degree-reckless, you should consider the lesser offense of voluntary manslaughter. Voluntary manslaughter is an intentional killing upon a sudden quarrel or in the heat of passion.

"If you decide the defendant intentionally killed Jesus Quezada, but that it was done upon a sudden quarrel or in the heat of passion, the defendant may be convicted of voluntary manslaughter only."

Saenz argues that the instruction did not clearly indicate that he did not have the burden to prove a sudden quarrel or heat of passion, but rather instructed the jury to decide, by an unexpressed standard, whether the killing was the result of a sudden quarrel or in the heat of passion. The defense did not object to the instruction given.

Saenz equates the mitigating circumstance of heat of passion or sudden quarrel to an affirmative defense, then argues if heat of passion or sudden quarrel is raised as a mitigating circumstance, the jury must be instructed pursuant to PIK Crim. 3d 52.08, which states:

"The defendant raises (describe the affirmative defense) as a defense. Evidence in support of this defense should be considered by you in determining whether the State has met its burden of proving that the defendant is guilty. The State's burden of proof does not shift to the defendant."

Killing another in the heat of passion or upon a sudden quarrel is not an affirmative defense, and the trial court was not required to give PIK Crim. 3d 52.08. The trial court properly instructed the jury as to the State's burden of proof. The court's instructions were not erroneous.

## Eyewitness Identification

Saenz contends that the trial court erred in failing to give a cautionary jury instruction regarding eyewitness testimony of Lozano. Saenz did not request the instruction at trial. The standard of review where a party fails to object to the giving or failure to give a jury instruction has been previously stated.

In any criminal action in which eyewitness identification is a critical part of the prosecution's case and there is a serious question about the reliability of the identification, a cautionary instruction should be given advising the jury as to the factors to be considered in weighing the credibility of eyewitness identification testimony. *State v. Richmond*, 258 Kan. 449, Syl. ¶ 4, 904 P.2d 974 (1995).

In determining the reliability of eyewitness identification, this court has identified five factors to be considered: (1) the opportunity of the witness to view the defendant at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior descriptions of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime an the confrontation. *State v. Warren*, 230 Kan. 385, 390, 635 P.2d 1236 (1981). Other factors include the emotional state of the witness and whether the witness had observed the alleged perpetrator on an earlier occasion. See PIK Crim. 3d 52.20.

The factors set out in *Warren* and in the pattern instruction contemplate an eyewitness who does not know the defendant personally. Here, Lozano, who had seen the defendant early in the evening at the bar, knew the defendant. Lozano's reliability was not questionable. Under the facts, the trial court was not required to give the eyewitness instruction.

Affirmed.