NOT DESIGNATED FOR PUBLICATION

No. 119,435

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JANELL M. HAMMARLUND,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; MERLIN G. WHEELER, judge. Opinion filed May 3, 2019. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Meghan K. Morgan*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., BUSER and STANDRIDGE, JJ.

PER CURIAM: Janell M. Hammarlund was charged with one count of aggravated burglary, a severity level 4 person felony, and one count of theft, a class A misdemeanor. Following a jury trial, Hammarlund was found guilty on the aggravated burglary charge but found not guilty on the theft charge. Hammarlund appeals her conviction, claiming that it was not supported by sufficient evidence and, alternatively, that the district court committed reversible error when it refused her request to give an eyewitness identification limiting instruction to the jury. Finding no error, we affirm Hammarlund's conviction.

1

In February 2017, Robert Whittington began to notice that cash and pocket change were disappearing from his home in Lyon County, Kansas. This happened approximately five separate times between February and April 2017. On those occasions, Whittington would wake up in the morning and find that his wallet was placed in his pocket differently than was normal. When he checked his wallet, any cash and pocket change he previously had would be gone. Whittington, who never locked his doors at night, suspected that someone was entering his home and stealing his money while he slept. He reported these suspicions to the Lyon County Sheriff's Office sometime in March 2017. With nothing aside from Whittington's statement to go on, the person who received Whittington's statement said there was little the office could do besides take down his complaint and create a case number.

The thefts continued. Despite their ongoing nature, Whittington refused to lock his doors because he was growing more and more curious about who might be stealing from him. To discover the thief's identity, Whittington enlisted the help of his friend, James Wood, who owned a game camera. A game camera is a device that is designed to hang discretely in the woods and take pictures of anything that walks in front of it. It is battery operated and stores the photographs on a secure digital (SD) card that can be read using a 4-inch by 6-inch card reader. Whittington and Wood placed the camera in Whittington's kitchen and positioned it so that it faced the front door. Because it was battery operated, Whittington only turned it on at night when he went to bed. He acknowledged, however, that there were days that he forgot to turn it off in the morning when he woke up.

On April 17, 2017—approximately four to six weeks after the game camera was installed—Whittington woke up and could tell that something was wrong in the house but he could not identify exactly what it was. He later described it as a general feeling that something was out of place. Although Whittington did not discover anything missing, he

was not surprised because he had begun hiding his money so that it was not easy to find. Whittington believed there might be photographs on the camera but he did not know how to access them. A few days later, on April 22, 2017, Whittington went to the Lyon County Sheriff's Office and reported the April 17, 2017 incident to Deputy Charles Moore. Because Whittington still could not access the photos, Deputy Moore agreed to come to Whittington's house the next day to view the photos on the camera and, if necessary, to take pictures of the crime scene.

After leaving the Lyon County Sheriff's Office, Whittington contacted Wood and asked him to come over with his card reader so that they could review the game camera photos. Wood arrived later that day and when he checked the camera, he found a number of photos depicting an intruder in Whittington's house. Specifically, the photos depicted a woman with long hair and glasses entering Whittington's home, rifling through his pockets, and then exiting. The photos were date stamped April 17, 2023, and time stamped 2:42 a.m., 2:44 a.m., and 2:45 a.m. When the two men saw the photos, they immediately identified the intruder as Hammarlund. Both men were quite familiar with Hammarlund because Wood had been in an on again/off again relationship with her for between 7 and 11 years. The two broke up for good in December 2016.

Deputy Moore arrived at Whittington's house the next day—April 23, 2017—and viewed the photographs using the card reader. As he did so, both Whittington and Wood reiterated that they believed Hammarlund was the woman depicted in the photos. Deputy Moore also reviewed the other photographs that were stored on the SD card and found that the only other person depicted was Whittington on the days that he forgot to turn off the game camera when he woke up. Deputy Moore then checked the settings on the camera. Comparing them to his own watch, Deputy Moore determined that the month and day of the date stamp was correct but the year was six years off and also that the time stamp was an hour off because it had not been adjusted for daylight savings time. Deputy Moore took possession of the SD card as he left and later used a computer in his office to

3

confirm that the photos on the SD card were the same as the ones Wood showed him using the card reader.

A few days later, on April 27, 2017, Deputy Moore made contact with Hammarlund at her job site. They met in the manager's office. Deputy Moore informed Hammarlund that he was investigating a burglary and asked her to remove her hat and hair piece so that he could get a better look at her. Deputy Moore testified he could not be sure during his interview with Hammarlund that she was the woman depicted in the game camera photos because he did not have the photos with him to conduct a comparison. As a result, Deputy Moore declined to arrest Hammarlund at that time. Deputy Moore told Hammarlund she was still under investigation but that he wanted to check the photos one more time. After doing so, Deputy Moore concluded Hammarlund was the woman depicted in the photos.

On May 23, 2017, Hammarlund was charged with one count of aggravated burglary and one count of theft. She pled not guilty to both charges, and a jury trial was held on October 16, 2017. At trial, Deputy Moore, Wood, and Whittington all testified to the facts outlined above. Notably, all three positively identified Hammarlund as the woman depicted in the game camera photos. Whittington also testified that he slept in his home every night and that no one, including Hammarlund, had permission to be in his home while he slept. The State then introduced photos of Hammarlund, pulled from old case files and off of Facebook, and compared them with the game camera photos. Hammarlund testified in her own defense and claimed that she was not the woman depicted in the photos. Instead she testified that the woman in the photos was Amy Whittington, the wife of Robert Whittington's nephew. To support that claim Hammarlund introduced a photo that she obtained from Amy Whittington's Facebook page and compared it with the game camera photos. The State also introduced photos from Amy Whittington's Facebook page and, again, compared them to the game camera

4

photos. All of the photos were admitted into evidence and available to the jury during its deliberations.

Following the trial, the jury found Hammarlund guilty of aggravated burglary but found her not guilty of theft. Hammarlund filed a motion for a new trial as well as a motion for a dispositional departure, requesting that she be placed on probation rather than sentenced to prison. The district court, taking up both motions simultaneously, denied the former but granted the latter of the two motions and sentenced Hammarlund to 36 months of probation with an underlying sentence of 56 months in prison.

ANALYSIS

Hammarlund claims the following two points of error on appeal: (1) Her conviction of aggravated burglary was not supported by sufficient evidence and (2) the district court committed reversible error when it refused her request to give an eyewitness identification limiting instruction to the jury. We address each of these claims in turn.

*Sufficiency of the evidence*

In support of her claim of insufficient evidence, Hammarlund argues that (1) the game camera photos were too "grainy" and "unclear" to identify the person depicted, (2) Whittington's testimony was contradictory, (3) the missing money was never recovered, and (4) even if she was depicted in the photos entering Whittington's home, the State failed to prove that she had the intent to commit a felony or therein.

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence,

5

resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

It is only in rare cases, where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt, that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983). In addition, a verdict may be supported by circumstantial evidence if such evidence provides a basis for a reasonable inference by the fact-finder regarding the fact in issue. Circumstantial evidence, in order to be sufficient, need not exclude every other reasonable conclusion. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). Indeed, even the most serious offenses can be based entirely on circumstantial evidence. 304 Kan. at 25; but see *State v. Richardson*, 289 Kan. 118, 127, 209 P.3d 696 (2009) ("'[T]he circumstances in question must themselves be proved and cannot be inferred or presumed from other circumstances.'").

To obtain a conviction for aggravated burglary, the State must prove beyond a reasonable doubt that (1) Hammarlund entered or remained within Whittington's home, (2) without authority, (3) while Whittington was inside, and (4) with the intent to commit a felony, theft, or sexually motivated crime therein. See K.S.A. 2018 Supp. 21-5807(b)(1). On appeal, Hammarlund claims there is insufficient evidence to establish beyond a reasonable doubt that it was her who entered Whittington's home and that, even if it was her, there is insufficient evidence to establish she had the intent to commit a felony, theft, or sexually motivated crime inside the home.

*Insufficient evidence of the intruder's identity*

With regard to the first element, Hammarlund argues that the game camera photos are "grainy" and "unclear" and therefore do not offer any concrete evidence as to the identity of the person entering Whittington's home. In addition, she argues that

6

Whittington's testimony was too confusing and contradictory to be credible. Lastly, Hammarlund argues the missing money was never recovered from her. But each of these arguments misconstrues the role of an appellate court when considering a challenge to the sufficiency of the evidence. It is not the role of this court to "'reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.'" *Chandler*, 307 Kan. at 668. Rather, we are required to look at the evidence in the light most favorable to the prosecution and determine whether it is sufficient to sustain a conviction. 307 Kan. at 668. Although Hammarlund's arguments present alternative explanations and ways of viewing the evidence in this case, they do nothing to dissuade the conclusion that, when viewed in the light most favorable to the prosecution, there is sufficient evidence to uphold her conviction.

At trial, the State presented testimony from three separate witnesses and supported that testimony with 17 different photographic exhibits. Whittington immediately identified the woman in the photos as Hammarlund. Whittington's best friend, Wood, also immediately identified the woman in the photos as Hammarlund. Wood testified that Hammarlund had been his girlfriend in an on again/off again relationship for 7 to 11 years and that they had recently broken up in December 2016. After meeting Hammarlund and viewing the photos for a second time, Deputy Moore testified to his conclusion that Hammarlund was the woman depicted in the game camera photos. Finally, the jury was shown 17 different photographic exhibits in support of the witness testimony. The first three photos depicted a woman with long hair and glasses entering Whittington's home, rifling through his pockets, and then exiting. The jury also was shown known photos of Hammarlund that were pulled from old case files and off of Facebook. And lastly, the jury was shown known photographs of Amy Whittington, the wife of Whittington's nephew and the woman that Hammarlund claimed was depicted in the photos. All of these photographs were admitted into evidence and available to the jury during its deliberations. Viewing the evidence in the light most favorable to the prosecution, we find there is sufficient evidence from which a jury could conclude

beyond a reasonable doubt that Hammarlund was the individual who entered Whittington's home.

*Insufficient evidence of intent to commit a theft or felony*

Hammarlund argues that even if she is the individual depicted in the game camera photos entering Whittington's home, the State failed to prove beyond a reasonable doubt that she had the intent to commit a theft, felony, or sexually motivated crime inside Whittington's home. In support of this argument, Hammarlund points out that nothing was taken from Whittington's trailer on April 17, 2017. She also points out that the jury acquitted her on the theft charge. Relying on these points, Hammarlund argues it would be unreasonable for a jury to conclude beyond a reasonable doubt that the person in the game camera photo had the intent to commit a theft or felony inside Whittington's home. Hammarlund's argument, however, is undercut by the fact that the photos depict a woman entering Whittington's home and, once inside the home, rifling through the pockets of Whittington's pants. The fact that the intruder rifled through the pockets of the homeowner after entering the home without authority constitutes sufficient evidence from which a jury could reasonably infer beyond a reasonable doubt that the intruder intended to commit a theft. See *Logsdon*, 304 Kan. at 25 (verdict may be supported by circumstantial evidence if such evidence provides basis for reasonable inference by fact-finder regarding fact in issue).

After reviewing all the evidence in a light most favorable to the prosecution, and without reweighing evidence, resolving evidentiary conflicts, or making witness credibility determinations, we are convinced a rational fact-finder could have found beyond a reasonable doubt that it was Hammarlund who entered or remained within Whittington's home, without his authority, while Whittington was inside, with the intent to commit a theft therein.

*Eyewitness instruction*

Hammarlund argues that the district court committed reversible error when it denied her request for an eyewitness identification limiting instruction.

"When analyzing jury instruction issues, [an appellate court] follows a three-step process:

"'(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits to determine whether error occurred below; and (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless.' [Citation omitted.]" *State v. Pfannenstiel*, 302 Kan. 747, 752, 357 P.3d 877 (2015).

"At the second step, we consider whether the instruction was legally and factually appropriate, employing an unlimited review of the entire record. If the district court erred, and the error did not violate a constitutional right, 'the error is reversible only if [the court] determine[s] that there is a "reasonable probability that the error will or did affect the outcome of the trial in light of the entire record."' [Citations omitted.]" *State v. Louis*, 305 Kan. 453, 457-58, 384 P.3d 1 (2016).

With regard to the first factor, it is undisputed that Hammarlund properly preserved the issue and that this court has jurisdiction to hear her appeal. Therefore, we begin our analysis by deciding whether the eyewitness identification limiting instruction requested by Hammarlund was legally and factually appropriate, employing an unlimited review of the entire record. Legal appropriateness is whether the instruction fairly and appropriately states the applicable law. Like all questions of law, this court employs an unlimited standard of review. To determine whether the jury instruction was factually appropriate, this court determines if there was sufficient evidence, viewed in the light

most favorable to the requesting party, to support a factual basis for the instruction. *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012).

Defense counsel requested the district court provide the jury with the introductory paragraph of the eyewitness identification jury instruction, PIK Crim. 4th 51.110 (2017 Supp.), in conjunction with paragraph six of that same PIK instruction:

> "The law places the burden upon the State to identify the defendant. The law does not require the defendant to prove (he) (she) has been wrongly identified. In weighing the reliability of eyewitness identification testimony, you should determine whether any of the following factors existed and, if so, the extent to which they would affect accuracy of identification by an eyewitness. Factors you may consider are:
>
> . . . .
>
> "6. Whether there are any other circumstances that may have affected the accuracy of the eyewitness identification." PIK Crim. 4th 51.110 (2017 Supp.).

There is no question that PIK Crim. 4th 51.110 is a correct statement of the law. See *Plummer*, 295 Kan. at 163. Hammarlund argued before the district court that the eyewitness instruction also was factually appropriate because all of the witnesses at trial identified her solely from a grainy and unclear game camera photo. But the district court held a witness reliability instruction was not necessary. Specifically, the court found reliability was not an issue because the two key witnesses who identified her knew her well before they identified her as the individual in the photos. We agree with the findings made by the district court.

As a preliminary matter, the Notes on Use for this PIK instruction state that "unless there is evidence which causes the trial court to question the reliability of the eyewitness identification, this instruction should not be given." Notes on Use, PIK Crim. 4th 51.110 (2017 Supp.); see *State v. Harris*, 266 Kan. 270, 278, 970 P.2d 519 (1998).

Hammarlund's claim that all of the witnesses at trial identified her solely from a grainy and unclear game camera photo is insufficient to question the reliability of the witnesses who testified.

In addition, our Supreme Court has held the PIK instruction "contemplate[s] an eyewitness who does not know the defendant personally. Where the witness personally knows the individual being identified, the cautionary eyewitness identification instruction is not necessary. The accuracy of the identification can be sufficiently challenged through cross-examination." *State v. Calvin*, 279 Kan. 193, Syl. ¶ 9, 105 P.3d 710 (2005); see also *State v. Trotter*, 280 Kan. 800, 808-09, 127 P.3d 972 (2006) (no instruction necessary where defendant had been to witness' house and was not a stranger to witness); *State v. Mann*, 274 Kan. 670, Syl. ¶ 2, 56 P.3d 212 (2002) ("Where the witness personally knows the individual being identified, the cautionary eyewitness identification instruction is not necessary and the accuracy of the identification can be sufficiently challenged through cross-examination."); *State v. Saenz*, 271 Kan. 339, 354, 22 P.3d 151 (2001) (eyewitness identification instruction "contemplate[s] an eyewitness who does not know the defendant personally").

Here, Wood testified that he was in an on again/off again relationship with Hammarlund for between 7 and 11 years. Similarly, Whittington testified that Wood was his best friend and therefore he had met and interacted with Hammarlund on numerous occasions while she and Wood were dating. Those interactions included a few instances in which Wood would bring Hammarlund to Whittington's house and all three would sit outside and hang out together. Hammarlund largely confirmed these facts during her own testimony, specifically acknowledging that she knew both Whittington and Wood as a result of her long term, on again/off again relationship with Wood. It is therefore undisputed that Whittington and Wood personally knew Hammarlund prior to identifying her as the woman depicted in the game camera photos.

11

Based on our review of the record as a whole, we find that a limiting instruction regarding the eyewitness identifications was not factually appropriate. As such, the district court did not err when it denied Hammarlund's request to give such an instruction to the jury.

Affirmed.